GEORGE GIFFORD COMPANY, Respondent, v. JOHN N. WILLMAN et al., Appellants.

Kansas City Court of Appeals, January 11, 1915.

1. **SALES: Delivery and Acceptance.** Where the contract provided that the vendor was to sell and deliver melons of a certain character, size and quality, the vendor, in order to recover the full contract price, without regard to the condition of the melons, must show not only that the vendee accepted them but that there was a delivery of the melons to the vendees.

2. ———: ———. Where the vendor contracted to sell and deliver melons at a future time and at a specified place, delivery can be accomplished only in one of two ways, first by presenting to the vendees the bill of lading duly endorsed to them, or second, by some act of dominion or control over the melons exercised by the vendees. There could be no delivery so long as the title did not pass and the actual possession never left vendor.

3. ———: ———: **Right of Inspection.** When goods, the subject of a contract, are not present when the contract of sale is made and there is to be a future delivery at a certain place, the right of inspection is implied.

4. **CONTRACTS: Statute of Frauds.** The contract, being for the sale of goods of more than $30, was required to be in writing unless the goods had been accepted and received by the vendees.

5. ———: ———: **Contract Resting Partly on Parol Evidence: Waiver.** No recovery can be had upon a contract, required to be in writing, which rests partly on a writing and partly on parol evidence. But where there is no objection to the introduction of the parol evidence and the statute is nowhere interposed as a defense during the trial, the production of the Statute of Frauds is waived. The Statute of Frauds is an affirmative defense which is waived if not distinctly asserted, and it is too late to raise it for the first time in the motion for new trial.

6. ———: ———: **Subsequent Modifying Agreement: Consideration.** Where a written contract bound the vendor to perform certain obligations on his part, a mere promise thereafter on the part of the vendee to assume an additional burden

and thereby relieve the vendor of those obligations, being without consideration, is void and does not bind the vendee.

7. **PLEADING: Modified Contract.** Where the original contract is subsequently modified, suit must be brought upon the contract as modified.

8. **APPELLATE PRACTICE: Index to Abstract.** The failure of an appellant to index his abstract of record adds much to the time and labor required by the court to prepare an opinion in the case. For after the record has been read, it is frequently necessary to consult different portions thereof not only to verify statements of fact made in the opinion, but also to compare one item of evidence with another in order to clearly understand and state the relation which the facts therein established bear toward each other.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

REVERSED AND REMANDED.

*Spencer & Landis* for appellants.

(1)   The court committed error in permitting plaintiff to sue on a contract of purchase alleged in the petition and to recover under said contract orally modified, which modification was not declared upon or alleged in the petition, the contract being required to be in writing under the Statute of Frauds. Goller v. Hensler, 161 S. W. 584; Wilt v. Hammond, 165 S. W. 362. (2)   The Statute of Frauds does not have to be pleaded, but it may be taken advantage of by objection to testimony under a general denial. Leesley Bros. v. Fruit Co., 162 Mo. App. 195. (3)   To constitute an acceptance of goods under a contract of sale something more than mere words are necessary. Acceptance under a contract of sale comprehends both physical receipt and mental assent. 35 Cyc. 258, Benjamin on Sales (6 Am. Ed.), section 703; Edwards v. Railroad, 54 Me. 105; Calkins v. Hillman, 47 N. Y. 449; In re George Hill Co., 123 Fed. 866. (4)   As defendants did not receive and accept the cantaloupes and the can-

taloupes furnished were not in compliance with the defendants' order for same, the defendants could not be held liable from any standpoint for more than their actual market value. Fritsch Fdry. Co. v. Goodman Mfg. Co., 100 Mo. App. 414; Stamping Works v. Wicks, 144 Mo. App. 249, 260.

*A. L. Timblin* and *Sam Wilcox* for respondent.

(1) Appellants' so-called bill of exceptions is not properly identified as being the one filed in this case. There is nothing before this court but the record proper and the judgment should be affirmed. Miller v. Railroad, 145 Mo. App. 139, 140; Reno v. Jarrell, 163 Mo. 411; State v. Weingard, 168 Mo. 491; State v. Baty, 166 Mo. 561. (2) The case was tried throughout in the lower court by both plaintiff and defendants on the theory on which it was submitted to the jury, and defendants having adopted that theory and introduced its evidence in support thereof, and adopted that theory in both their given and refused instructions, cannot complain of the trial court's action in submitting the case to the jury as it did, but are bound thereby. 3 Cyc., pages 246, 247, 248, 253, 254, 255; Bowlin v. Creel, 63 Mo. App. 229, 234; McClanahan v. West, 100 Mo. 309, 322; Beilman v. Railroad, 50 Mo. App. 151, 156; Novelty Mfg. Co. v. Pratt, 21 Mo. App. 171, 173; Mitchell v. United Rys. Co., 125 Mo. App. 1, 11; Holzmer v. Railroad, 169 S. W. 102, 108. (3) The instruction on the measure of damages given by the court was correct. Ozark Lumber Co. v. Lumber Co., 51 Mo. App. 555, 561. (4) Defendants having asked no instruction on the measure of damages, cannot object to the one given. Beilman v. Railroad, 50 Mo. App. 151, 156; Geisman v. Electric Co., 173 Mo. 679; Childress v. Railroad, 141 Mo. App. 667, 690; Schlicker v. Gordon, 19 Mo. App. 479, 486. (5) The question of the Statute of Frauds must be called specifically to the attention of

the trial court during the trial, and unless this is done by special answer or by specific objection to testimony on that ground, or by special instruction on that point, then it is waived and cannot be raised for the first time on motion for new trial as defendants have attempted to do in this case. Leesly v. Fruit Co., 162 Mo. App. 195; Schmidt v. Rozier, 121 Mo. App. 306; Young v. Branson, 99 Mo. App. 565; Ewart v. Young, 119 Mo. App. 483; Scharff v. Klein, 29 Mo. App. 549.

TRIMBLE, J.—Plaintiff and defendants entered into a contract whereby the former agreed to sell to the latter a carload of Northern California cantaloupes in standard crates and of choice quality at $2.75 per crate to be shipped and delivered to defendants at St. Joseph. The term "standard crates" in that business means that the melons shall be of a certain size. This suit is brought to recover the contract price thereof.

The petition alleges that the contract of sale was made, and that, under it, plaintiffs shipped a carload of 360 crates of cantaloupes at $2.75 per crate to defendants at St. Joseph and that the same were duly received and accepted by defendants, but that the latter, after receiving and accepting the melons, refused to pay for or unload the same, and several days later notified plaintiff that they would not pay for or unload them; that upon receipt of such notice plaintiff sold the cantaloupes for the benefit of defendants and applied the proceeds to defendants' credit; that by reason of defendants' delay in notifying plaintiff that they would not pay for said car, the melons became overripe and greatly depreciated so that they brought only $60.34 above freight charges, icing, demurrage, and cost of selling, and that after applying this amount and the freight and refrigeration charges up to the time of defendants' receipt and acceptance of said car (aggregating $292.30), on the contract price of the car

($990), left $637.36 due plaintiff for which judgment was prayed.

The answer was a general denial.

The contract, being for the sale of goods of more than $30, was required to be in writing unless the goods had been accepted and received by defendants. [Section 2784, R. S. 1909; Reigart v. Manufacturers Coal, etc., Co., 217 Mo. l. c. 164.] This the petition alleged. Plaintiff's evidence disclosed that the contract was in writing all right enough because it consisted of two letters, one from defendants ordering the melons and another from plaintiff's agents accepting and agreeing to fill the order. The contract thus made was simply that plaintiff would sell *and deliver* to defendants at St. Joseph, Missouri, a car of cantaloupes of the quality, at the price and packed as hereinabove stated. Defendants were to do nothing more than to pay the price on delivery. They were not required by the terms of the contract to do anything else or to assume any other burden in order to assist in bringing about a delivery. After thus establishing a written contract obligating plaintiff to make the delivery, the evidence showed, without dispute, that the car was billed to shipper's order, so that when the car arrived in St. Joseph, the title to the melons remained in plaintiff and did not pass. [Hunter Bros. Milling Co. v. Stanley, 132 Mo. App. 308.] The bill of lading did not arrive at St. Joseph until some days after the car did, consequently the arrival of the car at that point was not a delivery of the car to defendants, since they could not get possession of the car until they had obtained the bill of lading, duly endorsed to them, and present it to the railroad which held the melons. (It seems that, in cases where a person desires to obtain possession of freight billed to shipper's order but does not have possession of the bill of lading endorsed to him, this railroad will first assure itself that the bill

187MoApp3

of lading was not in town, and then require the one desiring to obtain possession of the freight to give a bond for twenty per cent over the value of the goods or to put up a certified check for ten per cent above the value thereof, and upon either of these requirements being complied with, deliver the freight without the bill of lading.) To prove delivery of the car, plaintiff introduced evidence of an alleged telephone conversation between plaintiff's agent and defendants' son and agent, John Willman, Jr., in which it was claimed that the latter agreed that defendants would put up a bond with the railroad company and get possession of the car in that way. Of course, this oral agreement, if entered into, was the addition of another element to the contract contained in the letters, namely, the obligation on defendants' part to put up the bond above mentioned. So that the contract established by plaintiff's evidence rests partly upon the letters and partly on parol evidence as to the telephone agreement. Defendant, therefore, claims that no recovery can be had because no action can be maintained upon a contract, required by the statute to be in writing, which rests partly in a writing and partly on parol evidence. Doubtless this may be true in a proper case and where the Statute of Frauds is interposed as a defense. But in this case, not only was no objection made to the introduction of the evidence of the telephone agreement but the Statute of Frauds was not invoked in any manner throughout the trial. It was mentioned for the first time in the motion for new trial. The defense of the Statute of Frauds is an affirmative one which is waived if not distinctly asserted, and it is too late to raise it for the first time in the motion for new trial. [Young v. Ledford, 99 Mo. App. 565; Ewart v. Young. 119 Mo. App. 483.] Unless the attention of the court is distinctly called to the Statute of Fraud in some way by

the defendant during the trial so that the court may know that the statute is invoked, it will be treated as waived. [Schmidt v. Rozier, 121 Mo. App. 306.] So that all objections made by defendant on account of the Statute of Frauds are of no avail.

The car of cantaloupes were shipped from California, July 30th, and arrived in St. Joseph on August 7th. As stated, it was billed to shipper's order. Defendants' fruit inspector, Wise, attempted to inspect the melons on that day but was refused permission to do so by the railroad, as it did not know for whom the car was intended. He reported his inability to inspect the car to defendants' son who ascertained from the railroad that the car was not billed to them but to the order of the shipper, who was at Sacramento, California. The son then called plaintiff's broker at Kansas City, who had made the sale, and, according to the son's version, told him how the car was billed and asked him for the bill of lading, but the broker said he didn't have it, that he surmised plaintiff had it and that he would get it for defendants. The broker says the son told him in this conversation over the phone that the cantaloupes were acceptable, and, upon the broker's suggestion that defendants get possession of the car without the bill of lading by putting up bond, the son agreed to do so; also that he told the son he would surrender the draft through a bank at St. Joseph. The broker thereupon wired plaintiff to send the bill of lading to him at Kansas City. When it came, the broker attached a draft for the purchase price of the melons and sent it to the St. Joseph bank. The son, however, denies that he agreed to put up any bond or that he said the melons were acceptable. This telephone conversation was on the 7th. On the 8th, Wise, the inspector, and young Willman inspected the car but found that the melons were overripe, unmarketable, not of choice quality, and were not of the

size called for in the contract, and young Willman says he told the broker over the 'phone, that day, that they did not want this car because of the condition of the melons. The bill of lading arrived in St. Joseph the next day, August 9th, and was presented to defendants with draft attached, but defendants refused to pay it because of the delay and the condition of the melons. Thereupon, on the 11th, defendants notified plaintiff by wire and also by letter that they would not accept the car on account of delay and the poor quality of the melons. The bill of lading was not endorsed to defendants and there is no testimony that it ever was.

Defendants introduced evidence, without objection, that the car was to be delivered subject to inspection by the purchaser and that such was the general custom of those in that business. But without this, as the goods were not present when the contract was made and there was to be a future delivery at a certain place, the right of inspection was implied. [Hunter Bros. Milling Co. v. Stanley, 132 Mo. App. 308.]

There was no testimony to show that the melons were in the condition or of the character required by the contract, and the court so instructed the jury. But plaintiff's contention was that the defendants accepted and received the car by virtue of the alleged agreement in the telephone conversation, and that, having done this, the question of the condition or character of the melons became immaterial. And plaintiff's instruction number 2 told the jury that if they believed the car was delivered at St. Joseph and that defendants accepted the melons and agreed to obtain delivery of them by putting up the required bond, then it was immaterial whether the melons were such as plaintiff agreed to furnish. And this was followed by an instruction that if the jury found for plaintiff

they should return a verdict for the full contract price of the melons less the freight and refrigeration charges and the amount plaintiff afterwards sold them for. But before plaintiff could recover for the purchase price of the melons, regardless of their condition, it was incumbent to show both acceptance by defendants and a delivery to them. Delivery could be accomplished only in one of two ways, first, by presenting to the defendants the bill of lading duly endorsed, of which there was no evidence, or second, by some act of dominion or control over the melons exercised by the defendants, and of this there was no evidence. There was some evidence to the effect that defendants promised over the telephone to put up a bond and thereby effectuate delivery themselves. But there was nothing in the contract requiring them to do this, and a mere promise, without consideration, to do this, did not bind defendants to put up the bond. And as no bond was put up there was no delivery since the melons never did, either actually or constructively, come into defendants' possession. Consequently, plaintiff could not treat the question of the condition of the melons as immaterial and recover the contract price. Delivery and acceptance of goods under a contract of sale involves more than mere words. There must be both mental assent and physical receipt. [35 Cyc. 258; Benj. on Sales (7 Ed.) sec. 703; In re George M. Hill Co., 123 Fed. 866.] How could there be a delivery so long as the title to the melons remained in plaintiff and the actual possession thereof never left plaintiff nor passed to defendants?

Besides, this alleged telephone agreement involved the performance on the part of defendants of an additional obligation, that of executing a bond in order to effectuate delivery, which, under the contract pleaded, was a duty resting on plaintiff. The agreement, therefore, if made, was a modification of

the contract declared on, and while defendants, by failing to invoke the Statute of Frauds, cannot complain because the modification was oral, they can complain because plaintiff sued on the original contract and not on the contract as modified. They specifically made this objection and saved the point, when their objection was overruled. They also demurred to the evidence both at the close of plaintiff's case and also at the close of all the evidence. So that, the fact that after these demurrers were overruled they joined in submitting the case on plaintiff's theory, which course they were compelled to adopt by the court's acceptance of that theory, did not cause them to waive the point. It is well settled that if, after a contract is made, it is modified by a subsequent agreement, the contract as modified must be declared on. [Goller v. Hensler, etc. Co., 161 S. W. 584, l. c. 588; Carman v. Harrah, 170 S. W. 388, l. c. 392 and cases cited.]

In view of the foregoing, we are of the opinion that the case should be reversed and the cause remanded for a new trial. Before closing we desire to observe that the failure of appellant's counsel to put an index to the abstract has caused us to expend much additional time and labor in the preparation of this opinion. After the record has been read, it is frequently necessary to consult various portions thereof not only to verify statements of fact made in the opinion, but also to compare one item of evidence with another in order to clearly understand and state the relation which the facts therein established bear toward each other. This consumes a vast amount of time and labor of search which a well prepared index would largely obviate. Reversed and remanded. All concur.